**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JAENDAR HUTAURUK,                    )   NO. EDCV 26-2130-AS
                                     )
                Petitioner,          )
                                     )
        v.                           )   **MEMORANDUM DECISION AND ORDER**
                                     )
U.S. DEPARTMENT OF HOMELAND          )
SECURITY, et al.,                    )
                                     )
                Respondents.         )
_____)

**I.**

**INTRODUCTION**

On April 24, 2026, Jaendar Hutauruk ("Petitioner"), an immigration detainee proceeding through counsel, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 ("Petition") against: the United States Department of Homeland Security ("DHS"); DHS Secretary Markwayne Mullin; Fereti Semaia the Warden/Superintendent of the United States Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California; Tim Robbins, Acting Director of the Los Angeles Field Office; and Todd Blanche, Acting United States Attorney General (collectively "Respondents").  (Docket ("Dkt.") No. 1).  The Petition

raises four grounds for habeas relief: Respondents are seeking to unlawfully remove Petitioner to a third country in violation of (1) the Immigration and Naturalization Act ("INA") and (2) the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA"); (3) Petitioner has been denied due process of law because (a) his continued detention is unrelated to the purposes justifying civil immigration detention and (b) he was re-detained in an arbitrary manner and without the formal processes and findings required by statute and regulation to revoke his order of supervision; and (4) Petitioner is being denied due process of law because DHS is seeking to remove him to a third country without providing him meaningful notice or a meaningful opportunity to seek legal protection. (Petition, ¶¶ 52-73). Petitioner seeks, among other relief, an order seeking his immediate release from custody as well as an order requiring Respondents to provide Petitioner access to his constitutional and statutory rights prior to any removal to a third country. (Petition at 15-16).

On April 26, 2026, the Court issued a Notice of General Order 26-05 and Briefing Schedule ("Notice") that required Respondents to file an Answer to the Petition by no later than seven days from the date of the Notice, and allowed Petitioner to file a Reply by no later than three days after service of Respondents' Answer. (Dkt. No. 6).

On April 24, 2026, Respondents filed an Answer to the Petition stating "Respondents are not presenting an opposition argument at this time. Should the Court enter relief, judgment may be entered, and consistent with the 'expeditious resolution' of § 2241 Immigration Petitions required by the General Order, no more filings or proceedings

will be necessary in this matter."  (Dkt. No. 9).  On May 5, 2026, Petitioner filed a Reply brief requesting the Court enter a judgment releasing him from immigration detention.  (Dkt. No. 10).

The parties have consented to proceed before the undersigned Magistrate Judge in this matter.  (Dkt. Nos. 7, 11-13).

## II.

## BACKGROUND

Petitioner is an Indonesian citizen who entered the United States as a visitor in 1993 and was later placed in removal proceedings with Indonesia designated as the country of removal.  (Petition, ¶¶ 1, 47). On March 13, 2006, an Immigration Judge ordered Petitioner removed from the United States to Indonesia but also granted Petitioner's application for withholding of removal to Indonesia.  (Petition, ¶¶ 1, 13, 48 & Exh. A).  The removal order is final.  (Petition, ¶¶ 1, 13).

After being granted withholding of removal, Petitioner remained in the United States under an Order of Supervision ("OSUP"). (See Petition, ¶¶ 13, 67).  He complied with all ICE check-in requirements and obeyed all United States laws.  (Petition, ¶ 49). Petitioner has three United States citizen children and is the beneficiary of an I-130 Petition his United States citizen son filed on

his behalf, which was approved on September 17, 2021.[1] (Petition, ¶ 49 & Exh. B).

On April 14, 2026, ICE agents detained Petitioner at his scheduled check-in. (Petition, ¶ 50). Petitioner is currently detained at the Adelanto ICE Processing Center. (Petition, ¶¶ 1, 9, 50).

On April 20, 2026, ICE Deportation Officer J. Mendoza informed Petitioner's counsel that ICE has "submitted for a third country removal" and "headquarters is reviewing the case for third country removal." (Petition, ¶ 51 & Exh. C).

## III.

## DISCUSSION

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." Hernandez v. Sessions, 872 F.3d 976, 990 (9th Cir. 2017); Zadvydas v. Davis, 533 U.S. 678, 690 (2017). "[T]he Due Process Clause applies to all persons within the United

---

[1] "Form I-130 is a 'Petition for Alien Relative' that allows U.S. citizens or lawful permanent residents . . . to establish a qualifying family relationship with a foreign relative who wishes to immigrate to the United States." Lu v. United States Citizenship & Immigr. Servs., 2025 WL 2784708, *1 n.4 (D. Nev. 2025). If, as Petitioner asserts occurred here, United States Citizenship and Immigration Services ("USCIS") "verifies the relationship and approves the petition, then the noncitizen, if already in the United States, can apply to USCIS for adjustment of status to permanent resident, or, if not, to a Department of State consular office for an immigrant visa[.]" Hanan v. United States Citizenship & Immigr. Servs., __ F.4th __, 2026 WL 1130578, *5 (9th Cir. 2026).

4

States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693; Hernandez, 872 F.3d at 990; see also Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (quoting Reno v. Flores, 507 U.S. 292, 306 (1993))). "Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690; Hernandez, 872 F.3d at 990. "'Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.'" Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1162 (C.D. Cal. 2025) (quoting Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025)); see also Ortega v. Bonnar, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("[T]he fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest."), appeal dismissed by, 2021 WL 1590193 (9th Cir. 2021).

## A.    Re-Detention

Petitioner contends he was denied due process of law when Respondents re-detained him without providing him "the formal processes and findings that are required by statute and regulation in order to revoke his order of supervision." (Petition, ¶¶ 67-68). Respondents, as noted, have not opposed the Petition. (Dkt. No. 9). "Respondents' non-opposition itself is a basis to grant the Petition." Guadran v. Mullin, 2026 WL 1182198, *1 (C.D. Cal. 2026); S.A. v. Mullin, 2026 WL

5

1242905, *1 (C.D. Cal. 2026); see also Soleimani v. Larose, 2025 WL 3268412, *3 (S.D. Cal. 2025) ("By failing to respond to the claims . . . asserted, Respondents have conceded the claims."). And even if that was not the case, Petitioner is entitled to release from custody because his re-detention without notice and a hearing violated due process.

Section 1231 governs the detention and release of noncitizens,[2] such as Petitioner, who are subject to a final order of removal. 8 U.S.C. § 1231; see also Johnson v. Arteaga-Martinez, 596 U.S. 573, 578 (2022) (Section 1231(a) "governs the detention, release, and removal of individuals 'ordered removed.'"); Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022) ("Once an alien has a final removal order that is not subject to a judicial stay, detention authority shifts to 8 U.S.C. § 1231(a)."). Under Section 1231(a), the Attorney General is directed to remove noncitizens subject to final orders of removal within 90 days (the "removal period"), and is further directed to detain such aliens during the removal period. 8 U.S.C. § 1231(a)(1-2); Arteaga-Martinez, 596 U.S. at 578. "If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). "The noncitizen may be detained beyond the removal period under certain conditions,[3] but 'if

_____

[2] The Court uses the term "noncitizen" – meaning noncitizen of the United States – rather than "alien" "unless quoting language from the immigration statutes or past opinions containing the term alien." Avilez v. Garland, 69 F.4th 525, 527 n.1 (9th Cir. 2023).

[3] In particular, "[a]fter the removal period expires, the Government 'may' detain only four categories of people: (1) those who

released, shall be subject to the terms of supervision in paragraph (3).'" Nguyen v. Noem, 817 F. Supp. 3d 889, 895 (C.D. Cal. 2025) (quoting 8 U.S.C. § 1231(a)(6); footnote added).

"Sections 241.4 and 241.13 of Title 8 of the Code of Federal Regulations govern the release of noncitizens pursuant to 8 U.S.C. § 1231(a) — and the *revocation* of that release." Hashemi v. Noem, 809 F. Supp. 3d 1027, 1034 (C.D. Cal. 2025) (italics in original); Martinez v. Noem, __ F. Supp. 3d __, 2026 WL 538034, *4 (C.D. Cal. 2026); Nguyen, 817 F. Supp. 3d at 895. "[B]oth sections establish certain required process for the revocation of release." Hashemi, 809 F. Supp. 3d at 1034; see also Duong v. Noem, 815 F. Supp. 3d 1155, 1160 (S.D. Cal. 2025) ("Once ICE releases a non-citizen on supervised release, 'ICE's

---

are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Arteaga-Martinez, 596 U.S. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)); Clark v. Martinez, 543 U.S. 371, 377 (2005); see also Zadvydas, 533 U.S. at 688 ("The post-removal-period detention statute applies to certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'" (citations omitted)). Even then, Section 1231(a)(6) "'does not permit indefinite detention' but instead 'limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States.'" Arteaga-Martinez, 596 U.S. at 579 (quoting Zadvydas, 533 U.S. at 689). "[T]he presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.'" Martinez, 543 U.S. at 378 (quoting Zadvydas, 533 U.S. at 701).

ability to re-detain that noncitizen is constrained by its own regulations.'" (citation omitted)).  "Upon revocation of release, the noncitizen (1) 'will be notified of the reasons for revocation of his or her release' and (2) will be given 'an initial informal interview promptly after his or her return to [] custody to afford the[m] an opportunity to respond to the reasons for revocation stated in the notification.'"  Nguyen, 817 F. Supp. 3d at 895 (quoting 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3)); Hashemi, 809 F. Supp. 3d at 1034; Duong, 815 F. Supp. 3d at 1160.  "If the noncitizen continues to be detained after the informal interview, they shall be scheduled for the 'normal review process,' which begins with notification of a records review and scheduling of an interview, 'which will ordinarily be expected to occur within approximately three months after release is revoked.'"  Hashemi, 809 F. Supp. 3d at 1034 (quoting 8 C.F.R. §§ 241.4(l)(3) & 241.13(i)(2)); Nguyen, 817 F. Supp. 3d at 895.  "In simpler terms, in order to revoke release, the government must notify the noncitizen of the reason for the revocation and give them both an informal and formal interview."  Hashemi, 809 F. Supp. 3d at 1034 (quoting Delkash v. Noem, 2025 WL 2683988, *4 (C.D. Cal. 2025); emphasis omitted); Nguyen, 817 F. Supp. 3d at 895-96.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  Mathews v. Eldridge, 424 U.S. 319, 332 (1976).  Courts examine procedural due process claims in "two steps."  Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989); Vasquez v. Rackauckas, 734 F.3d 1025, 1042 (9th Cir. 2013).  First, courts

consider whether the petitioner was deprived of a constitutionally protected liberty interest, and second "whether that deprivation was accompanied by sufficient procedural protections." Johnson v. Ryan, 55 F.4th 1167, 1179 (9th Cir. 2022); Thompson, 490 U.S. at 460.

"Petitioner has a substantial private interest in remaining out of immigration custody.  As a noncitizen residing within the United States, Petitioner is entitled to constitutional due process." Medrano-Rocha v. Santacruz, 817 F. Supp. 3d 871, 878 (C.D. Cal. 2026); Martinez, __ F. Supp. 3d at __, 2026 WL 538034 at *4.  Moreover, it is undisputed that Petitioner spent a significant period of time on supervision before he was again taken into custody.[4]  (Petition, ¶¶ 1, 13, 67).  "Petitioner's release on supervision gave rise to 'the most elemental of liberty interests – the interest in being free from physical detention by one's own government.'"  Martinez, __ F. Supp. 3d at __, 2026 WL 538034 at *4 (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)); Medrano-Rocha, 817 F. Supp. 3d at 878; see also Foucha v. Louisiana, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."); M.R. v. Chestnut, __ F. Supp. 3d __, 2026 WL 218808, *4 (E.D. Cal. 2026) (Petitioner's "release and time out of custody gave rise to a constitutionally protected liberty interest."); Valencia Zapata v. Kaiser, 801 F. Supp. 3d 919, 932 (N.D. Cal. 2025) ("Being held in custody by the government at an

---

[4]  Petitioner alleges he was granted withholding of removal in 2006, and he was residing in Redlands, California on an OSUP when re-detained.  (Petition, ¶¶ 13, 48, 67).  But it is unclear exactly when Petitioner was released pursuant to an OSUP.

earlier time does not eliminate one's liberty interest in remaining on release.   That is because, as courts have repeatedly recognized, conditional release from physical restraint gives rise to a protected liberty interest."); Pinchi, 792 F. Supp. 3d at 1032 ("[E]ven when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody.").

Additionally, Petitioner's release on supervision created "an implicit promise" that liberty will be revoked only for failing to comply with the conditions of release.  Morrissey v. Brewer, 408 U.S. 471, 482 (1972); Martinez, __ F. Supp. 3d at __, 2026 WL 538034 at *4; Medrano-Rocha, 817 F. Supp. 3d at 878.   Accordingly, "Petitioner establishes a significant liberty interest in remaining out of immigration custody."  Martinez, __ F. Supp. 3d at __, 2026 WL 538034 at *4; Medrano-Rocha, 817 F. Supp. 3d at 878; Pinchi, 792 F. Supp. 3d at 1032-33.

Having determined Petitioner has a protected liberty interest in remaining out of custody, the Court applies the three-part Mathews test to determine whether the government's procedures were constitutionally sufficient.  Under Mathews, courts consider:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including

the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335; Rodriguez Diaz, 53 F.4th at 1207; Hernandez, 872 F.3d at 993.

As to the first factor, as explained, Petitioner has a significant interest in remaining out of custody given his release and the extensive time he has spent out of custody.  Morrissey, 408 U.S. at 482; Martinez, __ F. Supp. 3d at __, 2026 WL 538034 at *4; Medrano-Rocha, 817 F. Supp. 3d at 878; Pinchi, 792 F. Supp. 3d at 1032-35; see also Hernandez, 872 F.3d at 993 ("As to the first [Mathews] factor, the private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'  That is beyond dispute." (citation omitted)); Meneses, 811 F. Supp. 3d at 1163 ("Petitioner has a substantial private interest in remaining in his home, providing for his family, and participating in the community, all out of custody."); Doe v. Becerra, 787 F. Supp. 3d 1083, 1093-94 (E.D. Cal. 2025) ("It cannot be gainsaid that Petitioner has a substantial private interest in maintaining his out-of-custody status. . . .  The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty."). Accordingly, the first Mathews factor favors Petitioner.

As to the second factor, it is undisputed that, despite his protected liberty interest, Petitioner was detained without notice and a pre-detention hearing. (Petition, ¶ 67). Under these circumstances, there is a high risk of erroneous deprivation of liberty. See Martinez, __ F. Supp. 3d at __, 2026 WL 538034 at *5 ("[T]he risk of erroneous deprivation is significant without a pre-detention hearing."); Meneses, 811 F. Supp. 3d at 1164 ("There is an unacceptably high risk that the government would erroneously deprive Petitioner of his liberty interest absent a pre-detention hearing."); Duong v. Kaiser, 800 F. Supp. 3d 1030, 1040 (N.D. Cal. 2025) ("The government's unilateral determination that re-detention is warranted is far less likely to be correct than the decision reached by a neutral adjudicator in a bond hearing."); Pinchi, 792 F. Supp. 3d at 1035 ("[I]t is clear that there is a significant risk that the government will erroneously deprive Ms. Garro of that liberty interest if it does not provide her with a pre-detention hearing. Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor Ms. Garro Pinchi has had an opportunity to determine whether there is any valid basis for her detention."); Torres Ferrera v. Scott, 2026 WL 776145, *5 (W.D. Wash. 2026) ("Where a person with a protected liberty interest is provided no process at all to contest its deprivation, due process cannot be satisfied. Put differently, no process can never equal due process. The risk of erroneous deprivation will always be unacceptably high where no process is provided. . . ."); G.S. v. Hermosillo, 2026 WL 179962, *3 (W.D. Wash. 2026) ("[T]he absence of pre-deprivation procedures created an unacceptably high risk of erroneous deprivation"). Civil immigration detention is

12

"nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community. Zadvydas, 533 U.S. at 690; Martinez, __ F. Supp. 3d at __, 2026 WL 538034 at *5. "In releasing Petitioner on OSUP. . . , ICE necessarily determined Petitioner did not pose a significant flight risk or danger to the community." Martinez, __ F. Supp. 3d at __, 2026 WL 538034 at *5; Chen v. Sec'y of Homeland Sec., 2026 WL 1196338, *3 (C.D. Cal. 2026). "Respondent[s] offer[] no evidence or argument showing anything has changed since then demonstrating Petitioner no longer meets these criteria." Medrano-Rocha, 817 F. Supp. 3d at 879. Moreover, "[t]he risk of a wrongful deprivation is particularly high here given the evidence that Petitioner has complied with the terms of his release and has maintained required contacts with the federal government, including the one that precipitated his detention." Meneses, 811 F. Supp. 3d at 1164; (see also Petition, ¶¶ 49-50). Accordingly, the second Mathews factor favors Petitioner.

Regarding the third factor, "the government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" Rodriguez Diaz, 53 F.4th at 1208 (quoting Demore v. Kim, 538 U.S. 510, 518 (2003)). "However, it is important to stress that the 'government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him without [a pre-detention] hearing[,]'"[5] Mendoza v. Noem, 2026 WL 683180,

---

[5] "[D]etention for its own sake is not a legitimate governmental interest." Claros v. Albarran, 811 F. Supp. 3d 1062, 1070 (N.D. Cal. 2025); see also Pinchi, 792 F. Supp. 3d at 1036 ("Detention for its own sake, to meet an administrative quota, or because the government has not yet established constitutionally required pre-detention procedures

*7 (E.D. Cal.) (quoting Zagal-Alcaraz v. ICE Field Office, 2020 WL 1862254, *7 (D. Or.), report and recommendation adopted by, 2020 WL 1855189 (D. Or. 2020)), report and recommendation adopted by, 2026 WL 927654 (2026); see also Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019) ("[T]he Court notes that the governmental issue at stake in this motion is the ability to detain Petitioner without providing him with another bond hearing, not whether the government may continue to detain him." (italics omitted)), appeal dismissed by, 2019 WL 4855033 (9th Cir. 2019), and as many courts have recognized, "there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like [P]etitioner without a pre-detention hearing." Meneses, 811 F. Supp. 3d at 1164; Martinez, __ F. Supp. 3d at __, 2026 WL 538034 at *5; see also Pinchi, 792 F. Supp. 3d at 1036 ("[T]here is no countervailing government interest — the third and final *Mathews* factor — that supports conducting a bond hearing only after Ms. Garro Pinchi has been detained, rather than in advance thereof."); Doe, 787 F. Supp. 3d at 1094 ("The final *Mathews* factor is simple as the Government's interest in placing Petitioner in detention without a hearing is low."); Ortega, 415 F. Supp. 3d at 970 ("[T]he government's interest in re-arresting Ortega without a hearing before an IJ is low."); Van Nguyen v. Bondi, 818 F. Supp. 3d 1235, 1242 (W.D. Wash. 2026) ("[T]he government's interest in arresting and detaining a noncitizen without a hearing is low where the noncitizen was already released because the government had been persuaded he would not pose a flight risk or a danger to the community."). Indeed, "[t]he efficiency burden entailed by a bond hearing would be minimal. As

is not a legitimate government interest.").

other courts have observed, bond hearings require little expenditure of resources." Duong, 800 F. Supp. 3d at 1040; see also Martinez, __ F. Supp. 3d at __, 2026 WL 538034 at *5 ("[C]ustody hearings in immigration court are 'routine' and impose only a 'minimal' cost." (citations omitted)).

Therefore, applying the Mathews factors, Petitioner was denied due process of law when he was re-detained without notice and a pre-detention hearing. See Zinermon v. Burch, 494 U.S. 113, 127 (1990) (Applying Mathews, "the Court usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property."); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) ("An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.' We have described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant [liberty or] property interest.'" (citations and italics omitted)); Torres Ferrera, 2026 WL 776145 at *5 ("Because Petitioner had no opportunity to respond to the reasons for her detention, her re-detention violated her due process rights under the Fifth Amendment to the United States Constitution. Therefore, the Court finds that Petitioner is in custody in violation of the Constitution of the United States."). And "[b]ecause Petitioner's deprivation of liberty without due process has been unlawful from its

inception, [his] immediate release is required."[6] <u>Torres Ferrera</u>, 2026 WL 776145 at *6; <u>see also</u> <u>Movsesyan v. Bondi</u>, 2026 WL 712824, *2-5 (C.D. Cal. 2026) (ordering "Petitioner's immediate release, and prevent[ing] Respondents from re-detaining Petitioner without notice and an opportunity to be heard" when Petitioner had "shown that his re-detention without any notice or an opportunity to be heard violates procedural due process"); <u>Ovikian v. Noem</u>, 2026 WL 391431, *4 (C.D. Cal. 2026) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. . . .   The only appropriate remedy is to release Petitioner and enjoin his re-detention, unless and until he is provided due process measures with respect to the revocation of his [Order of Supervision]."); <u>Juan v. Noem</u>, 2026 WL 607714, *3 (W.D. Wash. 2026) ("The appropriate remedy for the violation of Petitioner's constitutional rights is release.").

### B.   Third Country Removal

As set forth above, Petitioner's counsel was informed that ICE has "submitted for a third country removal" of Petitioner. (Petition, ¶ 51 & Exh. C).  Petitioner contends his statutory rights have been violated and he has been denied due process of law because Respondents, in line with current DHS policy, are seeking his removal to an unspecified third country without providing him adequate notice or a meaningful opportunity to seek protection from such removal. (Petition, ¶¶ 31-46,

---

[6]   Having reached this conclusion, the Court need not address Petitioner's remaining challenges to his detention.

52-59, 70-73).   Respondents have not filed an opposition argument, essentially conceding Petitioner is entitled to the relief he seeks. See Lopez-Rivas v. Santacruz, 2026 WL 1288651, *8 (C.D. Cal. 2026) ("Respondents 'are not presenting an opposition' to Petitioner's request for an injunction prohibiting Petitioner's transfer to a third country absent notice and an opportunity to be heard on the matter.  In effect, Respondents lack of opposition[] is a concession that the injunction should be granted." (citation omitted)).   In any event, Petitioner is entitled to relief for the reasons discussed herein.

"When an alien is found ineligible to remain in the United States, the process for selecting the country to which he will be removed is prescribed by 8 U.S.C. § 1231(b)(2)." Jama v. Immigr. & Customs Enf't, 543 U.S. 335, 337 (2005).  "In order of priority, a noncitizen may be removed to (1) a country designated by the noncitizen; (2) a country of which the noncitizen is a subject, national, or citizen; or (3) a country with which the noncitizen has a lesser connection." Vashchuk v. Bondi, __ F. Supp. 3d __, 2026 WL 381163, *4 (W.D. Wash. 2026); Jama, 543 U.S. at 339-41.  "If the above options are 'impracticable, inadvisable, or impossible,' the noncitizen may be removed to 'another country whose government will accept the alien into that country.'" Vashchuk, __ F. Supp. 3d at __, 2026 WL 381163 at *4 (quoting 8 U.S.C. § 1231(b)(2)(E)(vii)); Jama, 543 U.S. at 340-41.  "Removal to countries identified outside of removal proceedings are referred to as 'third country removals.'"  A.A.M. v. Andrews, 815 F. Supp. 3d 1124, 1129 (E.D. Cal. 2025); see also Kumar v. Wamsley, 817 F. Supp. 3d 1059, 1065 (W.D. Wash. 2025) ("If the Government has a removal order but no country to which an IJ has authorized removal — for instance, if the IJ

17

granted withholding of removal to the country designated in the order — it can remove the noncitizen to a third country, meaning any country not designated on the removal order.").

Although DHS has authority to effectuate third country removals, "[t]he government is prohibited from removing a person to a third country where they may be persecuted or tortured." Vashchuk, __ F. Supp. 3d at __, 2026 WL 381163 at *4; A.A.M., 815 F. Supp. 3d at 1129-30; see also L.R. v. Noem, __ F. Supp. 3d __, 2026 WL 161605, *7 (D. Nev. 2026) ("[T]he INA specifically bars deportation to countries in which the noncitizens would face persecution or torture." (citing 8 U.S.C. § 1231(b)(3)(A)). Section 1231(b)(3)(A) allows for withholding of removal "if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A); Johnson v. Guzman Chavez, 594 U.S. 523, 530 (2021). "And the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), prohibits removal of a noncitizen to a country where he is likely to be

tortured."[7]  <u>Vashchuk</u>, __ F. Supp. 3d at __, 2026 WL 381163 at *4 (citations omitted); <u>Guzman Chavez</u>, 594 U.S. at 530-31.

In light of these protections, Petitioner challenges Respondents' third country removal policy, which he alleges violates the INA, CAT and his right to due process of law.  (<u>See</u> Petition, ¶¶ 31-46, 52-59, 70-73).  The policies Petitioner challenges are set forth in memorandum dated March 30, 2025, and July 9, 2025.  (<u>See</u> Petition, ¶¶ 31-46).  In particular,

> On March 30, 2025, [DHS] issued updated guidance on third country removals.  The guidance states that noncitizens may be removed to a third country without notice or other "further procedures" if the country has given diplomatic assurances that individuals "removed from the United States will not be persecuted or tortured" and the Department of State deems those assurances credible.  If the country has not provided assurances (or the assurances are deemed incredible), DHS will notify the noncitizen of its intent to remove them to the third country but "will not affirmatively ask whether the

---

[7] "Withholding of removal and CAT protection only restrict *where* the Government may remove a noncitizen to, not *whether* the noncitizen is subject to removal.  Thus, even if the IJ grants such protection, the removal order remains valid and enforceable, albeit not to the identified country or countries of risk."  <u>Kumar</u>, 817 F. Supp. 3d at 1065 (italics in original); <u>see</u> <u>also</u> <u>Guzman Chavez</u>, 594 U.S. at 536 ("If an immigration judge grants an application for withholding of removal, he prohibits DHS from removing the alien to that particular country, not *from* the United States.  The removal order is not vacated or otherwise set aside. It remains in full force, and DHS retains the authority to remove the alien to any other country authorized by the statute." (italics in original)).

[noncitizen] is afraid of being removed" there.  Only if the noncitizen affirmatively expresses a fear of removal will the officer refer them to [USCIS] for a screening interview to assess eligibility for withholding of removal or CAT protection.  If USCIS determines the noncitizen likely qualifies for protection, it will refer the matter to the immigration court or to ICE, depending on the circumstance. And if the referral is to ICE, rather than to the immigration court, ICE may either move to reopen the noncitizen's removal proceedings "for the sole purpose of determining eligibility for protection" or it may designate a different country of removal.

Weeks after this guidance was issued, [a] district court in [Massachusetts] certified a plaintiff class and issued a class-wide preliminary injunction establishing procedures DHS and ICE had to follow before removing noncitizens to a third country. [D.V.D. v. U.S. Dep't of Homeland Sec., 778 F. Supp. 3d 355, 394 (D. Mass. 2025), injunction terminated by, __ F. Supp. 3d __, 2026 WL 521557 (D. Mass. 2026) (entering final judgment declaring unlawful and setting aside the third country removal policy embodied in the March 30, 2025 and July 9, 2025 memoranda)[8]].  The United States Supreme Court stayed the preliminary injunction without explanation pending appeal in the First Circuit. [Dep't of Homeland Sec. v. D.V.D., 145 S. Ct. 2153 (2025)].

---

[8]  The First Circuit has stayed the final judgment pending appeal. See Lopez-Rivas, 2026 WL 1288651 at *5.

On July 9, 2025, following the Supreme Court's stay, ICE issued guidance to its agents reinstating the March 30 DHS memorandum.  The policy set out in the July 9 guidance largely mirrors the March 30 memorandum, but adds that, in cases where no diplomatic assurances exist, ICE will serve a "Notice of Removal" identifying the country of removal, translate the notice for the noncitizen, and "generally wait at least 24 hours following service . . . before effectuating removal."  "In exigent circumstances[,]" however, ICE may, with proper approval, execute removal in as little as six hours after service.

Kumar, 817 F. Supp. 3d at 1065-66 (some citations omitted; footnote added); Esmail v. Noem, 2025 WL 3030589, *1-2 (C.D. Cal. 2025).

"Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." Vilchez v. Holder, 682 F.3d 1195, 1199 (9th Cir. 2012); J.G.G., 604 U.S. at 673; Flores, 507 U.S. at 306.  These protections require that "'no person shall be' removed from the United States 'without opportunity, at some time, to be heard.'"  A.A.R.P. v. Trump, 605 U.S. 91, 94 (2025) (per curiam) (citation omitted); Martinez, __ F. Supp. 3d at __, 2026 WL 538034 at *7.  Instead, "[d]ue process requires notice that is 'reasonably calculated, under all the circumstances, to apprise interested parties' and that 'afford[s] a reasonable time . . . to make an appearance,'" including, in the context of immigration detention, "sufficient time and information to reasonably be able to contact counsel, file a petition, and pursue appropriate relief." A.A.R.P., 605 U.S. at 94-95

(quoting <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950)); <u>Martinez</u>, __ F. Supp. 3d at __, 2026 WL 538034 at *7; <u>see</u> <u>also</u> <u>Andriasian v. Immigr. & Naturalization Serv.</u>, 180 F.3d 1033, 1041 (9th Cir. 1999) (A "basic tenet of constitutional due process [is] that individuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence."); <u>Abramian v.</u> <u>Bondi</u>, __ F. Supp. 3d __, 2026 WL 166907, *7 (C.D. Cal. 2026) ("Courts in this District and others have repeatedly ruled that detainees have due process rights to notice and an opportunity to be heard before being deported to a third country."); <u>L.R.</u>, __ F. Supp. 3d at __, 2026 WL 161605 at *12 (A "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." (citation and internal quotation marks omitted)).   "Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." <u>Andriasian</u>, 180 F.3d at 1041; <u>Ibarra-Perez v.</u> <u>United States</u>, 154 F.4th 989, 995 (9th Cir. 2025); <u>see</u> <u>also</u> <u>Najjar v.</u> <u>Lynch</u>, 630 F. App'x. 724, 724 (9th Cir. 2016) ("In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country.").

Given these requirements, it is clear, as numerous courts have held, that the challenged third-country removal policies violate due

process of law. See, e.g., Martinez, __ F. Supp. 3d at __, 2026 WL 538034 at *8 ("ICE's policy plainly violates the Due Process Clause. Blanket assurances from third countries cannot substitute for Petitioner's due process right to notice and an opportunity to be heard. Additionally, ICE's policy of requiring noncitizens to affirmatively raise a fear of prosecution or torture denies Petitioner her 'right to apply . . . for withholding of deportation.'" (citations omitted)); Pham v. Warden, __ F. Supp. 3d __, 2026 WL 673404, *16 (E.D. Cal.) ("Joining numerous other courts, the undersigned finds that ICE's policy for third-country removals — which provides little to no notice of the country to which a noncitizen is to be removed and no meaningful opportunity to raise a fear-based claim — is incompatible with Ninth Circuit law and violates due process."), report and recommendation adopted by, 2026 WL 849861 (E.D. Cal. 2026); Kumar, 817 F. Supp. 3d at 1069 ("[N]umerous courts in this district and elsewhere have held that ICE's third country removal policy violates due process."); Vishal v. Chestnut, 811 F. Supp. 3d 1179, 1187 (E.D. Cal. 2025) ("Multiple courts have found the government's third country removal policy violates due process and is contrary to Ninth Circuit precedent."); Lopez-Rivas, 2026 WL 1288651 at *9 ("Courts have repeatedly held that due process is violated where third-country removal procedures fail to provide adequate notice and a meaningful opportunity to raise fear-based claims before removal is executed."). Accordingly, Petitioner "is entitled to relief on this ground and respondents should be enjoined from removing him to a third country without first providing adequate notice and an opportunity to raise a fear of removal." Pham, __ F. Supp. 3d at __, 2026 WL 673404, at *17; Martinez, __ F. Supp. 3d at __, 2026 WL 538034 at *9; Vishal, 811 F. Supp. 3d at 1188.

**IV.**

**ORDER**

Accordingly, it is hereby ORDERED that the Petition (Dkt. No. 1) is **GRANTED**. Respondents shall immediately release Petitioner from immigration custody subject to the conditions of Petitioner's most recent order of supervision, if any, and without the imposition of any new or further restraints, such as reporting requirements, GPS, or electronic monitoring. Respondents are also enjoined from re-detaining Petitioner absent strict compliance with the requirements of due process and all applicable statutes and regulations.

With respect to any third country removal, Respondents must provide written notice of removal to both Petitioner and his counsel in a language Petitioner can understand. Following notice, Petitioner must be given a meaningful opportunity, and a minimum of ten days, to raise a fear-based claim for protection prior to removal. If Petitioner demonstrates a reasonable fear of removal to the third country, Respondents must move to reopen Petitioner's removal proceedings. If Petitioner is not found to have demonstrated a reasonable fear of removal to the third country, Respondents must provide a meaningful opportunity and a minimum of fifteen days for Petitioner to seek reopening of his immigration proceedings. See Pham, __ F. Supp. 3d at __, 2026 WL 673404 at *19; Kumar, 817 F. Supp. 3d at 1074; Vishal, 811 F. Supp. 3d at 1188; Carlos Muñoz v. Santacruz, 2026 WL 1194243, *5 (C.D. Cal. 2026).

Finally, the Court ORDERS that Respondents shall file a declaration by no later than 5:00 p.m. on May 26, 2026, confirming Petitioner has been released from custody.  IT IS SO ORDERED.

DATED: May 22, 2026

_____/s/_____
ALKA  SAGAR
UNITED  STATES  MAGISTRATE  JUDGE
